# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Christopher Hintz,                                Civil No. 10-119 (DWF/AJB)

        Plaintiff,

v.                                                     **MEMORANDUM**
                                                        **OPINION AND ORDER**

JP Morgan Chase Bank, National Association,
Bank of America, Washington Mutual Asset
Acceptance Corp., WAMU Mortgage Pass-Through
Certificate Series 2007-OA3 Trust, and Certificate
Holders of WAMU Mortgage Pass-Through
Certificate Series 2007-OA3,

        Defendants.

_____

Christopher Hintz, *Pro Se*, Plaintiff.

Bryant D. Tchida, Esq., and Peter J. Schwingler, Esq., Leonard Street and Deinard, PA, counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss. For the reasons set forth below, the Court grants the motion.

## BACKGROUND

On February 9, 2007, Plaintiff Christopher Hintz and Sandra Hintz, as joint tenants, executed a $2.4 million mortgage in favor of Washington Mutual Bank, F.A. ("Washington Mutual") that secured a lien for Hintz's property located at 20840 Channel

Drive, Greenwood, Minnesota (the "Property"). The mortgage was filed with the Hennepin County Office of the Registrar of Titles on February 26, 2007.

On September 25, 2008, Washington Mutual was seized and placed into the receivership of the Federal Deposit Insurance Corporation ("FDIC"). On that same day, the FDIC sold Washington Mutual's assets, including Hintz's mortgage, to JP Morgan Chase Bank, N.A. ("Chase"). Chase assigned the mortgage to Bank of America, N.A. ("Bank of America") in May 2009.

On May 19, 2009, Bank of America appointed Chase as its power of attorney with respect to foreclosures. The record is not clear as to when Hintz's mortgage went into default, although there appears to be no dispute about the fact that the mortgage is in default. On May 27, 2009, Hintz was served with a Notice of Mortgage Foreclosure Sale, which stated that the amount due and claimed to be due at that time was $2,728,240.56. On July 14, 2009, Bank of America purchased the Property at a foreclosure sale for $2,736,770.28. After the redemption period expired six months later, Hintz commenced this action against Defendants. Defendants now jointly move to dismiss all of Hintz's claims.

## DISCUSSION

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir.

1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

In the Amended Complaint, Hintz alleges ten counts against Defendants based on various theories: (a) Counts One through Six are entitled "Invalid Foreclosure"; (b) Count Seven is entitled "Violations of TILA"; and Count Eight is entitled "Violations

of RESPA"; (c) Count Nine[1] is entitled "Abuse of Standing"; and (d) Count Ten is entitled "Violations of Consumer Fraud Act." Defendants group their argument based on the theories underlying the various counts. The Court will address those theories below.

## I. Counts One through Five

In Counts One through Five, Hintz alleges that there was an invalid foreclosure because Defendants did not own the note and the mortgage; that there was an ineffective transfer of the note and the mortgage; and that Defendants lacked express authority to execute the documents necessary to commence the foreclosure proceedings. Defendants assert that these counts should be dismissed because publicly available documents maintained by the Hennepin County Registrar of Titles establish that Defendants had the authority to foreclose on the Property.

Asserting that this is "a case of deceptive lending practices and obfuscation," Hintz asserts that he needs "to review front and back of the one and only note with original ink signatures, to ascertain who in fact owns the note." (Doc. No. 15 at 2.) According to Hintz, when Chase assigned the mortgage but retained the note, "Chase forever separated those obligations, rendering the Mortgage unenforceable." (*Id*. at 2-3.)

The foreclosure statutes do not require production of the original note at any point during a foreclosure proceeding. *See Stein v. Chase Home Fin.*, Civ. No. 09-1995, Doc.

---

[1] There are two Counts Eight in the Amended Complaint. For simplicity, the Court will refer to the second Count Eight as Count Nine and to the original Count Nine as Count Ten.

No. 165, Aug. 13, 2101 (MJD/JJG) (report and recommendation that describes the "show me the note" foreclosure defense and gathers cases rejecting the defense). As stated above, a court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp.*, 186 F.3d at 1079. Here, Defendants have attached publicly filed documents that establish who holds the mortgage and note. Specifically, the Assignment of Mortgage states that Chase, as successor in interest to Washington Mutual, assigned the mortgage and note to Bank of America as Trustee, which in turn designated Chase as its agent and authorized the law firm of Usset, Weingarden & Liebo, P.L.L.P. to act for purposes of the foreclosure. (*See* Doc. 13, Ex. B; Doc. 16, Exs. C and D.) Hintz plainly does not need and is not entitled to the original ink signature in order to ascertain who holds the mortgage and note. Therefore, Hintz's theory underlying Counts One through Five fail, and the Court dismisses those counts with prejudice.

## II. Count Six

In Count Six, Hintz alleges that Defendants "followed improper procedure for foreclosure by advertisement." (Doc. No. 2 at ¶ 33.) In his opposition memorandum, Hintz asserts that he is requesting that the "foreclosure sale and corresponding sheriff's certificate be vacated in keeping with Minnesota's longstanding tradition of strict compliance for mortgage foreclosure by advertisement." (Doc. No. 15 at 4.) Defendants do not respond directly to this claim or provide an in-depth explanation as to why this claim should be dismissed. Assuming all facts in the Amended Complaint to be true and

5

construing all reasonable inferences from those facts in the light most favorable to Hintz, the Court concludes that Hintz has not alleged a claim upon which relief can be granted. However, because little attention was paid to this claim, the Court finds it prudent to dismiss Count Six without prejudice.

**III.   Counts Seven and Eight**

In Counts Seven and Eight, Hintz alleges claims against Defendants under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* Defendants assert that these claims should be dismissed for failure to state a claim because those claims are based on allegations related to Washington Mutual's actions and Chase did not acquire or assume any such liabilities when it purchased Washington Mutual's assets from the FDIC. To support this argument, Defendants ask the Court to take judicial notice of the publicly available Purchase and Assumption Agreement ("P & A Agreement") between Chase and the FDIC. Specifically, pursuant to the P & A Agreement, the FDIC expressly retained the liabilities associated with Hintz's claims. (Doc. No. 13, Ex. D at ¶ 2.5.)

Hintz responds that "Chase's Maginot Line argument is that the [sic] all claims for damages are barred due to their [P & A Agreement] with the FDIC [but that] the argument has two major problems." (Doc. No. 15 at 5.) First, according to Hintz, the argument arbitrarily "draws a line in the sand relating to events prior to September 25, 2008." (*Id.*) Second, Hintz asserts that "Chase appears to be postulating that no one can rescind a loan that they acquired due to the terms of their [P & A Agreement]." (*Id.*)

6

Assuming all facts in the Amended Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Hintz, the allegations concerning the TILA and RESPA claims relate to activities in February 2007. Specifically, in the Amended Complaint, Hintz alleges that "the Mortgage disclosures violated TILA, in part, by failing to accurately disclose the amount of the finance charge," and "by failing to accurately disclose the true APR." (Doc. No. 2 at ¶¶ 37-38.) With respect to his RESPA claim, while Hintz makes no specific allegations, he appears to also be basing the RESPA claim on activities in February 2007, given his assertion that the statute of limitations has been tolled.

Judicial notice of the P & A Agreement, pursuant to which the FDIC sold certain assets and liabilities of Washington Mutual to Chase, is warranted in this case. *See Porous Media Corp.*, 186 F.3d at 1079; *see also Yeomalakis v. FDIC*, 562 F.3d 56, 60 (1st Cir. 2009) (taking judicial notice of the same P&A Agreement that is at issue in this case). The Court agrees with other courts that have consistently found that Chase did not assume any liability arising out of Washington Mutual's origination of home loans. *See, e.g., Federici v. Monroy,* No. C 09-4025 PVT, 2010 WL 1345276, at *3 (N.D. Cal. Apr. 6, 2010) (dismissing claims against Chase that were predicated on allegations that Washington Mutual negligently prepared loan documents and made negligent misrepresentations). Therefore, to the extent that Counts Seven and Eight are based on allegations related to events prior to Chase's acquisition of Hintz's mortgage, those counts are dismissed with prejudice based on the P & A Agreement.

For the first time in his opposition memorandum, Hintz raises the argument that his TILA claim is based on his purported rescission of the loan on November 4, 2009. Normally, a consumer may exercise the right to rescind until midnight of the third business day following delivery of notice of the right to rescind, or of all material disclosures, whichever occurs last. *See* 12 C.F.R. § 226.23(a)(3). In certain circumstances, however, the right to rescind can be extended until three years after consumption, upon transfer of all the consumer's interest in the property, or upon sale of the property, whichever occurs first. *Id.* Therefore, Hintz's right to rescind, at a maximum, expired when the Property was sold at the foreclosure sale in July 2009. Hintz, however, sent his notice-of-intent-to-rescind letter after that date. Given this, Hintz has failed to state a claim based on his purported November 2009 recession letter. *See Saygnarath v. BNC Mortgage, Inc.*, Civ. No. 06-3465 (DWF/AJB), 2007 WL 1141495, at *2 (D. Minn. Apr. 17, 2007).

Moreover, the rescission claim fails for a second reason. Hintz has failed to demonstrate an ability to tender payment of the net proceeds she received under the loan. Rescission under TILA is conditioned on repayment of the amounts advanced by the lender. *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1170 (9th Cir. 2003). Other courts have dismissed rescission claims under TILA at the pleading stage based on the plaintiff's failure to allege an ability to tender loan proceeds. *See, e.g., Garza v. Am. Home Mortg.*, No. CV F 08-1477 LJO GSA, 2009 WL 188604, at *2 (E.D. Cal. Jan. 27, 2009) (stating that "rescission is an empty remedy without [the borrower's] ability to pay back what she has received"). The Court finds such reasoning persuasive. For these

reasons, to the extent Counts Seven or Eight are based on rescission, Hintz has failed to state a claim upon which relief can be granted, and those counts are dismissed with prejudice.[2]

## IV. Count Nine

In Count Nine, Hintz alleges a claim entitled "Abuse of Standing," which states, in relevant part:

---

[2] In reaching this decision, the Court has analyzed *King v. Long Beach Mortg. Co.*, 672 F. Supp. 2d 238, 246 (D. Mass. 2009), a case Hintz asserts supports his right to proceed with his TILA claim. In that case, the plaintiff sought to rescind a mortgage loan made by Washington Mutual, arguing that TILA violations committed by Washington Mutual extended his right to rescind. *King*, 672 F. Supp. 2d at 241. Chase, as successor to Washington Mutual, moved for summary judgment and argued that under the P & A Agreement, the FDIC retained liability for the plaintiff's rescission claim. *Id*. at 242. The court disagreed, concluding that Chase was an assignee for purposes of a TILA rescission claim:

> A transaction is an assignment even if related duties or liabilities are not transferred. Just because liabilities are retained by the transferor does not mean the transferee is not an assignee. Under TILA, it is the assignee that is subject to the consumer's statutory right to rescind loan transactions. Section 1641(c) expressly states that the rescission right is available against "any assignee of the obligation." Having acquired the rights to the loan transaction, Chase is the current "assignee" of the promissory note and mortgage for the purposes of 15 U.S.C. § 1641(c). The fact the FDIC has retained the related liabilities does not alter Chase's status.

*Id*. at 248 (citations omitted). The court further emphasized that it would be contrary to congressional intent to allow a consumer's rescission right to be contracted away by the FDIC, the original assignee, and Chase, the subsequent assignee, without the consumer's consent or input. *Id*. While *King* does stand for the proposition that claims can go forward in certain circumstances against assignees, here, Hintz's claim nonetheless fails for the reasons stated above with respect to timing and the failure to demonstrate the ability to tender the loan payments.

> 46. Defendants have used their standing as Banks, Trusts, and National Associations and the presumptive status thereof to obfuscate both to its own agents and purveyors of action and information and to the Plaintiff, the true standing of the asset class and the process by which Plaintiff protects his rights.
>
> 47. Defendants have used their standing as Banks, Trusts, and National Associations and the presumptive status thereof to ignore standard documentation and notification requirements in order to deny Plaintiff of real property and rights of due process.
>
> 48. Plaintiff's pre-foreclosure belief that the parties he was engaged with, and all conversations, negotiations, and efforts were misguided, and all conversations were in fact pre-destined to fail.
>
> 49. Plaintiff has been injured publicly and privately, and Defendants are liable to Plaintiff for damages to be established at trial.

(Doc. No. 2.) Assuming all facts in the Amended Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Hintz, the Court can deduct no legal theory upon which Hintz can base a claim for "abuse of standing" upon which relief can be granted. However, because little attention was paid to this claim, the Court finds it prudent to dismiss Count Nine without prejudice.

## V.  Count Ten

In Count Ten, Hintz alleges a claim against Defendants for violations of the Minnesota Consumer Fraud Act ("CFA"), Minn. Stat. § 325F.68, *et seq.*, based on his allegation that his financing fees were not properly disclosed. First, this claim is insufficiently pled under Rule 9(b). *See Masterson Personnel, Inc. v. The McClatchy Co.*, Civ. No. 05-1274 (RHK/JJG), 2005 WL 3132349, at *4-5 (D. Minn. Nov. 22, 2005) (applying Fed. R. Civ. P. 9(b) to a claim under Minnesota's Consumer Fraud Act and concluding plaintiff had failed to state a claim for lack of specificity). Second, this claim

fails because it alleges only an individualized harm. An individual bringing a claim under the CFA must do so through the Private Attorney General Statute, Minn. Stat. § 8.31. *See Behrens v. United Vaccines, Inc., Div. of Harlan Sprague Dawley, Inc.*, 228 F. Supp. 2d 965, 968 (D. Minn. 2002). Individuals bringing a claim through the Private Attorney General Statute must "demonstrate that their cause of action benefits the public." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). In *Ly*, the Minnesota Supreme Court held that the successful prosecution of claimant's fraud claim, which involved a "single one-on-one transaction," would not benefit the public. *Id*. at 314. Under *Ly*, which sets forth the prevailing legal standard, Hintz's CFA claim fails, as it similarly involves a one-on-one transaction. For these reasons, Count Ten is dismissed with prejudice.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss (Doc. No. [7]) is **GRANTED**.

2. Counts One through Five and Seven, Eight, and Ten in Hintz's Amended Complaint (Doc. No. [2]) are **DISMISSED WITH PREJUDICE.**

3. Counts Six and Nine in Hintz's Amended Complaint (Doc. No. [2]) are **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 20, 2010     s/Donovan W. Frank
                            DONOVAN W. FRANK
                            United States District Judge